NITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BEAUBIEN ABREU,

     Plaintiff,

v.                              Case No.:  8:22-cv-1353-DNF

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____

## OPINION AND ORDER

Plaintiff Beaubien Abreu seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability and disability insurance benefits. The Commissioner filed the Transcript of the proceedings ("Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their positions. As explained below, the decision of the Commissioner is **REVERSED and REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

### I.    Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision

#### A.    Social Security Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A); 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

### B.    Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo

standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment, then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

Case 8:22-cv-01353-DNF   Document 25   Filed 08/23/23   Page 4 of 17 PageID 1064


If the claimant cannot perform his past relevant work, the ALJ must determine at step five whether the claimant's RFC permits him to perform other work that exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove he is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

## C.   Procedural History

Plaintiff applied for a period of disability and disability insurance benefits on March 4, 2020, alleging disability beginning March 1, 2020. (Tr. 64, 184-85). The application was denied initially and on reconsideration. (Tr. 64, 78). Plaintiff

requested a hearing and on September 13, 2021, a hearing was held before Administrative Law Judge Larry D. Shepherd ("ALJ"). (Tr. 35-63). On November 30, 2021, the ALJ entered a decision finding Plaintiff had not been under a disability from March 1, 2020, through the date of the decision. (Tr. 15-30). Plaintiff requested review of the decision, but the Appeals Council denied Plaintiff's request on April 27, 2022. (Tr. 1-5). Plaintiff filed a Complaint (Doc. 1) on June 14, 2022, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 11).

### D.    Summary of ALJ's Decision

In this matter, the ALJ found Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2024. (Tr. 17). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 1, 2020, the alleged onset date. (Tr. 17). At step two, the ALJ found Plaintiff had the following severe impairments: "obesity, diabetes mellitus, degenerative disc disease, status post fracture of the left fibula, left ankle disorder, obstructive sleep apnea, neuropathic pain, post-traumatic stress disorder (PTSD), and major depressive disorder." (Tr. 18). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404,

Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (Tr. 18).

Before proceeding to step four, the ALJ found that Plaintiff had the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 [C.F.R. §] 404.1567(b) except the claimant can occasionally climb, balance, stoop, kneel, crouch, and crawl. The claimant can understand, remember, and carry out simple, routine, and repetitive tasks. The claimant can relate to supervisors and coworkers on a superficial work basis. The claimant can have no contact with the general public. The claimant can adapt to a work situation. The claimant can deal with no more than occasional changes in work processes and environment.

(Tr. 21).

At step four, the ALJ found Plaintiff was unable to perform his past relevant work as a biomedical technician, field service engineer, house supervisor, and camp mentor. (Tr. 29). At step five, the ALJ found that considering Plaintiff's age (41 on the alleged disability onset date), education (at least high school), work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 29). At the hearing, the vocational expert testified that a person with Plaintiff's limitations could perform such occupations as:

   (1)    mail clerk, DOT 209.687-026,[1] light, SVP 2

---

[1] DOT refers to the *Dictionary of Occupational Titles*.

(2)    marker, DOT 209.587-034, light, SVP 2

(3)    collator operator, DOT 208.685-010, light, SVP 2

(Tr. 30, 61). The ALJ concluded that Plaintiff had not been under a disability from March 1, 2020, through the date of the decision. (Tr. 30).

## II.    Analysis

On appeal, Plaintiff raises two issues:

(1)    Whether the ALJ properly considered Plaintiff's credibility and subjective complaints; and

(2)    Whether the ALJ's RFC determination and hypothetical to the VE comprehensively described all of Plaintiff's symptoms.

(Doc. 20, p. 3).

### A.    Plaintiff's Subjective Complaints

Plaintiff contends that the medical evidence of record, including his diagnoses for post-traumatic stress disorder ("PTSD"), major depressive disorder, and anxiety, supports Plaintiff's subjective complaints of severe depression, inability to sleep, anxiety, and chronic thoughts of suicide. (Doc. 20, p. 4-7). The Commissioner argues that the ALJ properly considered Plaintiff's subjective complaints of disabling pain and other symptoms together with other evidence in deciding Plaintiff's claim. (Doc. 23, p. 6).

A claimant may establish that he is disabled through his own testimony of pain or other subjective symptoms. *Ross v. Comm'r of Soc. Sec.*, 794 F. App'x 858, 867 (11th Cir. 2019) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). In such a case, a claimant must establish:

> "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."

*Id.* (quoting *Dyer*, 395 F.3d at 1210).

When evaluating a claimant's testimony, the ALJ should consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication to alleviate pain or other symptoms; (5) treatment other than medication for relief of pain or other symptoms; (6) any measures a claimant uses to relieve pain or other symptoms; and (7) other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *Ross v. Comm'r of Soc. Sec.*, 794 F. App'x 858, 867 (11th Cir. 2019).

The ALJ should consider these factors along with all the evidence of record. *Ross*, 794 F. App'x 867. If the ALJ discredits this testimony, then the ALJ "'must clearly articulate explicit and adequate reasons for' doing so." *Id.* (quoting *Dyer*, 395

F.3d at 1210). The ALJ may consider the consistency of the claimant's statements along with the rest of the record to reach this determination. *Id.* Such findings "'are the province of the ALJ,' and we will 'not disturb a clearly articulated credibility finding supported by substantial evidence.'" *Id.* (quoting *Mitchell v. Comm'r of Soc. Sec.,* 771 F.3d 780, 782 (11th Cir. 2014)). A decision will be affirmed as long as the decision is not a "broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole." *Dyer*, 395 F.3d at 1211 (quotation and brackets omitted).

In the decision, the ALJ summarized Plaintiff's allegations and his testimony. (Tr. 21). Briefly, Plaintiff alleged disability based on PTSD, chronic inflammation, and pain. (Tr. 21). Plaintiff claimed he had neuropathic pain going down into his ankles and feet, and his feet felt like they were on fire. (Tr. 22). Plaintiff also claimed his medications made his mind numb. (Tr. 22). The ALJ acknowledged that Plaintiff reported he had depression, anxiety, nightmares, hypervigilance, sleep problems, audio and visual hallucinations, and marked difficulties with understanding and remembering, social functioning, concentration and pace, and performing daily activities, as well as other difficulties. (Tr. 21). The ALJ also noted that Plaintiff had ongoing nightmares and flashbacks from his military service. (Tr. 22). The ALJ reported that Plaintiff had attempted suicide, but was trying to get better for his kids' sakes. (Tr. 21-22). The ALJ found Plaintiff's medically determinable impairments

could reasonably be expected to cause Plaintiff's alleged symptoms, but Plaintiff's statements about the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical and other evidence in the record. (Tr. 22).

The ALJ then thoroughly summarized the medical evidence of record. (Tr. 22-29). The ALJ noted that Plaintiff had neuropathic pain from an unknown source, but it was likely from alcohol use. (Tr. 22). As a result of alcohol use, records from March 2020 and February 2021, showed he was ineligible for pain management, but the doctor did refer him to neurology for an evaluation and treatment as well as to a substance abuse program for alcohol use. (Tr. 22). While diagnosed with neuropathy, the ALJ noted that Plaintiff had no focal neurologic deficit. (Tr. 22). He was prescribed non-narcotic medications based on his continued smoking of marijuana. (Tr. 22). The ALJ discussed Plaintiff's diabetes mellitus, degenerative disc disease, post fracture of the left fibula, left ankle disorder, sleep apnea, and obesity. (Tr. 23). The ALJ found overall, Plaintiff had no motor or sensory deficits or other abnormalities of the extremities, and no more than minimal changes in imaging of the spine. (Tr. 24). The ALJ found Plaintiff's and Plaintiff's wife's statements that he could barely get out of bed or walk no more than 50 to 100 feet inconsistent with the medical evidence. (Tr. 24). In any event, the ALJ limited Plaintiff to light work in the RFC, with additional limitations. (Tr. 24).

The ALJ also found that Plaintiff's clinical findings and treatment history were inconsistent with the severity and frequency of symptoms related to Plaintiff's mental health impairments, including his PTSD and major depressive disorder. (Tr. 24). In February 2020, Plaintiff went to the VA and saw a psychiatrist with complaints of anxiety, cold sweats, inability to concentrate, pain, and depression. (Tr. 24). Plaintiff sought to increase his service-related disability. (Tr. 24). He had a worried and anxious mood, but was cooperative with good interaction, had organized thoughts, eye-contact, fair memory, fair concentration, and intact judgment and incite. (Tr. 24). He was prescribed Duloxetine. (Tr. 24). He participated in art therapy and sought psychotherapy. (Tr. 24). In March 2020, Plaintiff requested therapy due to suicidal ideations. (Tr. 24). In a follow-up call, he reported he was doing okay without suicidal ideations and in a later appointment, he was "super" depressed and "super" tired with a racing mind and nightmares every night. (Tr. 24). He had bad thoughts and heard explosions. (Tr. 24). Plaintiff reported his mood as anxious, but he remained cooperative, with organized thoughts and his interaction was fine, his memory and concentration remained fair. (Tr. 24).

Except for October 2020, from May 2020 through July 2021, Plaintiff had suicidal thoughts periodically, had periods of fluctuating anxiety and depression, had trouble sleeping, but was reported to be alert and oriented, directed, with a coherent thought process. (Tr. 24-26). Plaintiff's alcohol use also fluctuated throughout this

period, but in April 2021 he stated he stopped any alcohol use. (Tr. 26). The VA modified his medication regimen to help relieve his symptoms, but noted that psychotropic medication had no benefit with concurrent alcohol use. (Tr. 25). The ALJ determined that "although the claimant's alcohol use was considered with all of his impairments when crafting the residual functional capacity above, it is not material to this decision." (Tr. 27).

In October 2020, Plaintiff was admitted to the VA hospital for suicidal thoughts. (Tr. 25). He was depressed and reported hearing other people's thoughts and also heard explosions. (Tr. 25). At first, Plaintiff had a depressed mood and effect, poor eye contact, but linear, logical thoughts, and a grossly intact memory, attention, and concentration. (Tr. 25). He was discharged four days later after meeting treatment goals of resolving his depression and anxiety with suicidal ideations in the context of relationship stressors and chronic pain. (Tr. 25). On discharge, he had a euthymic mood, and his cognition, attention, and concentration were grossly normal. (Tr. 25). After discharge, he became intoxicated and attempted to hang himself. (Tr. 25). He was again hospitalized, was found alert, oriented, intact memory, but had an impaired judgment. (Tr. 25). After seven days, he was discharged and reported his depression and anxiety seemed to be better. (Tr. 25).

As the Regulations dictate, the ALJ considered Plaintiff's activities of daily living in evaluating Plaintiff's subjective statements, and found these "additional

factors or inconsistencies [ ] do not support a further reduction in the residual functional capacity." (Tr. 27). The ALJ then listed some of Plaintiff's daily activities: (1) in April 2020, Plaintiff reported he homeschooled his children, played with them, and made some art in his own time; (2) in May 2020 and February 2021, he was his children's caretaker, and took them to a park; (3) in August 2020, he vacationed in Florida with his family, and went to amusement parks; (4) in November 2020, he rode a skateboard to avoid isolating himself; (5) and at the end of 2020, he attended art school virtually, but in January 2021, he dropped two of his four classes because he could not handle the workload. (Tr. 27). In July 2021, he moved to Florida, which went well. (Tr. 27). The ALJ also noted that Plaintiff stopped working in 2020, and collected unemployment benefits for several months. (Tr. 27). But to receive unemployment benefits, the ALJ noted that Plaintiff must be ready, willing, and able to work, which conflicts with his subjective statements.

In the decision, the ALJ first relied on Plaintiff's reports of taking care of his children in May 2020 to find his statements inconsistent with the severity of his symptoms. (Tr. 27). But that is not the whole story. At a therapist's sessions in May 2020, Plaintiff reported that even though he had taken his children to a park, his depression was always there and he struggled with his PTSD, and he felt trapped and unable to get out because he was at home with his children while his wife worked. (Tr. 432). Plaintiff reported that he could only lie in bed and not really take care of

his children at that time. (Tr. 426). He reiterated he felt trapped, did not want to hurt himself, felt hopeless most of the time even though his boys helped him move forward. (Tr. 426). During the hearing, he testified he did not presently homeschool his children and that two of his children are in public school and his wife takes care of the youngest child. (Tr. 49). Plaintiff also testified that his wife drives him places because his medications numb his mind, and she must accompany him into the store. (Tr. 45). He added that at the store, people "freak" him out, and he hits "the ground and I covered." (Tr. 55). He also testified that he does not shower daily, does not do household chores, and his wife is trying to get a caregiver for him through the VA. (Tr. 57). When considered as a whole, these activities support Plaintiff's subjective mental complaints.

The ALJ also emphasized Plaintiff attended art school. (Tr. 27). Plaintiff took art classes as therapy; he was not pursuing a degree. (Tr. 43). He found school stressful because of the deadlines imposed. (Tr. 43). He had registered for four classes, could only handle two classes, and would only concentrate on one of them. (Tr. 42). And even with this reduced schedule, he was late for class or assignments, and was seeking an accommodation waiver because of the problems he was having. (Tr. 42). Even if he were going to college full time, a full-time college schedule does not equate with working on a regular and continuing bases of 8 hours, for 5 days per week. *Boccanfuso v. Comm'r of Soc. Sec.*, No. 8:21-cv-2272-MAP, 2022 WL

16743832, at *5 (M.D. Fla. Nov. 7, 2022) (citing SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996)). In addition, according to the transcript of Plaintiff's grades, his grades fluctuated between receiving A's and B's and failing classes. (Tr. 294). The ALJ failed to reconcile or show any inconsistency between Plaintiff's limitations while in school with his alleged inability to work on a full-time basis.

While the ALJ listed Plaintiff's activities of daily living in support of finding Plaintiff's subjective complaints inconsistent with these activities, when viewing the daily activities in the context of the whole record, Plaintiff's statements support his subjective complaints. Plaintiff reported taking care of his children, but also reported that he laid in bed and really did not take care of them. He repeatedly felt trapped while being at home. He also had suicidal ideations often, but was sometimes able to push them back. Although he attended art classes, he was not seeking a degree, took them for therapy, and could basically focus on only one class at a time. And as with many individuals with mental health problems, Plaintiff had good days and bad days, but overall, his daily activities support his subjective statements and complaints. Viewing the medical and other evidence as a whole, substantial evidence does not support the ALJ's finding that Plaintiff's clinical findings and treatment history conflict with his activities of daily living. As a result, remand is warranted to reconsider Plaintiff's subjective complaints.

**B.      RFC Assessment**

The ALJ found Plaintiff was able to perform light work limited to: understanding, remembering, and carrying out simple, routine, and repetitive tasks; relating to supervisors and coworkers on a superficial work basis; having no contact with the general public; being able to adapt to a work situation; and dealing with no more than occasional changes in work processes and environment. (Tr. 21). Plaintiff argues that substantial evidence does not support the mental limitations in the RFC and the ALJ did not include all of Plaintiff's limitations in the hypothetical to the vocational expert. (Doc. 20, p. 16-17). Because this action is remanded on other grounds that would affect an RFC assessment, on remand, the Commissioner is directed to reconsider Plaintiff's RFC and reconsider the wording of any subsequent hypotheticals to a vocational expert.

**III.    Conclusion**

For the reasons discussed above, the decision of the Commissioner is **REVERSED and REMANDED** such that this action is remanded under sentence four of 42 U.S.C. § 405(g) for the Commissioner to reconsider Plaintiff's subjective complaints, RFC, and the wording of any hypotheticals to a vocational expert. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate any motions and deadlines, and afterward close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on August 23, 2023.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties